# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **DEBRA CAUDILL O/B/O A.C.,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:06CV00056 |
| v. ) | |
| ) | **OPINION** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF** ) | By: James P. Jones |
| **SOCIAL SECURITY,** ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

*Sue Ella Koback, Pennington Gap, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, and Michael McGaughran, Regional Chief Counsel, and Nicole Schmid, Assistant Regional Counsel, Region III, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Debra Caudill filed this action on behalf of her son, A.C., challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the child plaintiff's claims for child's supplemental security income ("child's SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C.A. §§ 401-433, 1381-1383d

(West 2003 & Supp. 2007) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

My review is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

The plaintiff protectively applied for benefits on July 8, 2004, on behalf of her son A.C., alleging disability since August 1, 2002, due to a learning disability and bronchitis. This claim was denied on November 17, 2004, and upon reconsideration on June 6, 2005. The plaintiff requested and received a hearing before an administrative law judge ("ALJ") on March 3, 2006. By decision dated July 18, 2006, the ALJ found that A.C. was not disabled within the meaning of the Act. The Social Security Administration's Appeals Council ("Council") denied the plaintiff's request for review of this decision on September 13, 2006, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed the issues, and the case is ripe for decision.

II

The summary judgment record reveals the following facts. A.C. was born on May 2, 1996, and was ten years old at the time of the ALJ's decision. He attends public school. In May 2006, A.C.'s final third grade report card showed that he received a C in reading, a C+ in language arts, a C in math, a D- in social studies, an F in science, a B in spelling, a B in writing, an A in physical education, a B in conduct, a B- in effort, and satisfactory grades in art and music. (R. at 327.)

The record indicates that A.C. has been treated for a variety of ailments common to children his age. In particular, Dr. Parmod K. Sapra treated A.C. from April 2002 to January 2005 for recurrent cold symptoms and bronchitis. (R. at 159-85.) During this period, A.C. made thirteen office visits to Dr. Sapra.

Doris Presley, the school educational evaluator, examined A.C. on December 8, 2003. (R. at 203-04.) Presley administered the Woodcock Johnson III Test of Achievement ("WJ III") and determined from the results that A.C. had an overall level of achievement of average. (*Id.*) Furthermore, results found A.C. to have a high average performance in mathematics, average performance in math calculation skills, written language, and written expression, and low average performance in broad reading ability. (R. at 204.)

-3-

On December 16, 2003, Betty Dizney, a school psychologist conducted a psychological assessment of A.C. (R. at 209-12.) Dizney administered the Wechsler Intelligence Scale for Children-Third Edition ("WISC-III"), and A.C. obtained a verbal I.Q. score of 84, a performance I.Q. score of 102, and a full scale I.Q. score of 92. (R. at 210.) Dizney attributed A.C.'s lower scores in certain areas to impulsivity. (R. at 212.)

An Individualized Education Program ("IEP") was completed for A.C. on February 12, 2004, which determined the need for A.C. to attend a special education class for language arts. (R. at 121.) On February 24, 2005, a second IEP for A.C. was completed and again determined the need for A.C. to attend a special education class for language arts. (R. at 99.)

On August 31, 2004, A.C.'s third grade teacher, completed a Social Security Administration teacher questionnaire for disability determination. (R. at 111-18.) She indicated that A.C. had several serious problems acquiring and using information; many obvious problems attending to and completing tasks; no problems interacting and relating to others, moving about and manipulating objects, or caring for himself; and was physically healthy. (R. at 112-17.)

Two state agency physicians reviewed the evidence of record and completed a Childhood Disability Evaluation Form. On November 12, 2004, E. Hugh Tenison,

M.D., found that A.C. had a severe impairment or combination of severe impairments but that those impairments did not meet, medically equal, or functionally equal a listed impairment. (R. at 223-24.) On November 15, 2004, E. Joseph Duckwall, M.D., reviewed the evidence of record and concurred with Dr. Tenison's findings. (R. at 223-28.)

Eugenie Hamilton, Ph.D., a state agency psychologist, reviewed the evidence of record and completed a Childhood Disability Evaluation Form on June 6, 2005. (R. at 237-42.) Dr. Hamilton found A.C. had a severe combination of impairments but that his impairments did not meet, medically equal, or functionally equal a listed impairment. (R. at 237-42.)

On June 7, 2005, Dr. Richard M. Surrusco, a state agency physician, reviewed the evidence of record and agreed fully with Dr. Hamilton's findings. (R. at 237.)

On October 20, 2005, A.C. underwent a psychological evaluation by Donna Abbott, M.A., and B. Wayne Lanthorn, Ph.D. (R. at 314-18.) A.C. obtained a verbal I.Q. score of 91 on the WISC-III, a performance IQ score of 102, and a full scale IQ score of 95. (R. at 316.) Ms. Abbott and Dr. Lanthorn diagnosed A.C. as having a reading disorder, and academic difficulty and gave A.C. a global assessment of functioning ("GAF") score of 65. (R. at 317.) They determined that A.C. had no significant limitations in understanding and remembering. However, it was noted that

he had a limited ability to sustain age appropriate concentration and persistence. (R. at 320-21.)

On April 7, 2006, A.C. was evaluated by Suzanne Augustine, M.A., a licensed school psychologist. (R. at 330-39.) A.C. was referred to Augustine by his attorney, although the school system paid for the evaluation. (R. at 330.) At this evaluation, Augustine administered the WISC-III to A.C., and the results yielded a verbal IQ score of 80, a performance IQ score of 127, and a full scale IQ score of 101. (R. at 333.) Augustine attributed the forty-seven point discrepancy between A.C.'s verbal and performance IQ scores to a very pronounced learning disability in the area of some verbal skills. (R. at 335.) Further, Augustine found that A.C.'s overall functioning was within the average range of intelligence and diagnosed A.C. with attention deficit hyperactivity disorder and developmental dyslexia. (R. at 336.) She also rated A.C. as having a GAF score of forty-five. (*Id*.)

III

A disabled minor from a low-income family is entitled to receive child's SSI benefits under the Act. To qualify for such benefits, a child's income and assets—considering those imputed from the child's parents—must fall below a specified amount and the child must be "disabled." *See McClain v. Barnhart*, 299 F.

Supp. 2d 309, 314 (S.D.N.Y. 2004). A minor is deemed "disabled" if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).

The Commissioner's regulations set up a three-step process, that requires an ALJ to determine (1) that the child is not engaged in substantial gainful activity; (2) that the child has an impairment or combination of impairments that is severe; and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. § 404. 20 C.F.R. § 416.924 (2007).

To determine whether a child's impairments functionally equal a listed impairment, the ALJ evaluates a child's functional limitations in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself or herself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

These regulations provide that a child is "disabled" if he or she has an impairment or impairments of "listing-level severity," that is an "extreme" limitation in one of these domains or "marked" limitations in two or more domains. 20 C.F.R.

§ 416.926a(a). A marked limitation in a domain is found when an impairment interferes seriously with a claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An extreme limitation in a domain is found when the impairment interferes "very seriously" with a claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). "'Extreme' limitation also means a limitation that is 'more than marked.'" *Id.*

The plaintiff argues that the ALJ erred by finding that A.C.'s impairments did not meet or medically equal the requirements of a listed impairment. In particular, the plaintiff believes the record shows that A.C.'s impairments functionally equal the severity of a listed impairment and that he has an extreme limitation in his ability to acquire and use information.

As stated above, the court's role in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's finding. Where there is substantial evidence to support the finding below, this court may not substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In determining whether substantial evidence supports the Commissioner's decision, I must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his

rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Here, there is substantial evidence in the record to support the ALJ's finding that A.C.'s limitation was less than marked. Although the evidence suggests that A.C. has some difficulties in learning to read and write, his ability to acquire and use information is far less than marked.

Testing revealed that A.C. is of average intelligence. (R. at 316-317.) In her Educational Evaluation of A.C., Presley determined that his mathematics ability was on par with children his age and that it was "age-appropriate to advanced." (R. at 203.) She also noted that his reading ability was comparable to that of an average individual of his age, although his score was in the low to low average range. (*Id.*) This finding indicated that his overall reading ability was mildly delayed and that certain reading tasks would present difficulties for him. (*Id.*)

Additionally, in October 2005, testing conducted by Ms. Abbott and Dr. Lanthorn revealed that A.C. was considered to be in the high average to average range in most areas. They found him to be in the low average range only in his ability to attend in a verbal situation, his usage of common sense, and his abstract and concrete reasoning abilities. (R. at 317.) Although they did find that he had a

learning disability, they believed special education classes could improve his difficulties with learning. (R. at 318.)

In addition to the findings of Ms. Abbott and Dr. Lanthorn, four state agency physicians reviewed the record and determined that A.C. had a less than marked limitation in the domain of acquiring and using information. (R. at 223-25, 237-39.)

Accordingly, there was substantial evidence in the record to support the ALJ's finding that A.C.'s overall impairment in his ability to acquire and use information was less than marked.

There was also substantial evidence in the record to support the ALJ's finding that A.C. had a less than marked limitation in the domain of attending and completing tasks. The record does indicate that A.C. had problems with attending and completing certain tasks. However, none of those problems can be considered a marked limitation in the domain of attending and completing tasks.

The four state agency physicians who reviewed the evidence all concluded that A.C. had a less than marked limitation in his ability to attend and complete tasks. (R. at 223-25, 237-39.) Furthermore, the record is full of evidence showing that A.C. was attentive and cooperative in completing tasks and that his attention skills were on par with children his age. (R. at 204, 212.) Ms. Abbott and Dr. Lanthorn determined that A.C. could attend, concentrate, and complete tasks. (R. at 318.)

Hines also concluded that A.C. had no problems or only slight problems in several areas of attending and completing tasks. (R. at 113.) Accordingly, there was substantial evidence in the record to support the ALJ's finding that A.C. had a less than marked limitation in the domain of attending and completing tasks.

IV

The plaintiff next argues that the ALJ erred by failing to give controlling weight to the evaluation of Suzanne Augustine, a licensed psychologist. As an initial matter, only the opinions of a treating medical source should be given controlling weight. Under the regulations, a treating source is defined as the clamant's own physician or psychologist who has provided the claimant with medical treatment or evaluation, and who has had an ongoing relationship with the claimant. 20 C.F.R. § 416.902. A psychologist is not a treating source if the relationship "is not based on [the claimant's] medical need for treatment or evaluation, but solely on [the claimant's] need to obtain a report in support of [the claim] for disability." *Id.* In this instance, the record indicates that Augustine evaluated A.C. because he "was referred by his attorney for an independent evaluation." (R. at 330.) Augustine's report specifically names the plaintiff's attorney as the referring source. (*Id.*) Also, A.C. was examined by Augustine on only one occasion. Counsel for A.C. disputes that

-11-

this report was generated solely for the purpose of filing a disability claim. She asserts that she was retained by A.C.'s parents to ensure that he was receiving proper services pursuant to his eligibility for special education services. Even if this contention is true, the nature and length of the treatment relationship indicates that the evaluation at issue was not conducted primarily for medical treatment. As such, Augustine was not a treating a source and her opinions were not entitled to controlling weight.

Furthermore, even if Augustine could be considered a treating source, her findings were inconsistent with the record. As the ALJ noted, A.C. had undergone extensive psychological testing several times prior to Augustine's evaluation and these findings were inconsistent in many respects with Augustine's report. (R. at 15.) Accordingly, the ALJ did not err in finding that Augustine's evaluation was not entitled to controlling or significant weight.

V

Finally, the plaintiff argues that because Augustine's report occurred after the review by the four state agency physicians that the ALJ was required to consult an additional medical expert under SSR 96-6p, 1996 WL 374180 at *4. However, under SSR 96-6p, an ALJ must obtain an updated medical opinion from a medical expert

"[w]hen additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."

In this instance, the ALJ was not required to obtain an updated medical opinion because the record indicates that he reasonably did not believe Augustine's report would have changed the findings of the state agency physicians.

VI

For the foregoing reasons, the plaintiff's motion for summary judgment will be denied, and the Commissioner's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

DATED: September 21, 2007

/s/ JAMES P. JONES
Chief United States District Judge